10711.

WERBER v. MOSES *ET AL.*

(108 S. E. 396)

1. WILLS—IF CODICIL REASONABLY RECONCILABLE COURT WILL GIVE EFFECT TO SUCH PRESUMED INTENTION.—If there is an irreconcilable conflict between a will and a codicil, the latter must prevail, but especially in view of Civ. Code 1912, § 3569, providing that no will or any clause thereof shall be revocable but by some other will or codicil in writing "declaring the same," etc., if the codicil can reasonably be reconciled with the will, it must be presumed that the testator so intended, and the Court will give effect to such intention. .

2. WILLS—CODICIL HELD NOT TO VEST ESTATES IN FEE IN BENEFICIARIES OF LIFE ESTATES.—Under a will directing that testator's land be kept for the use and benefit of his wife, children, and children of deceased children until the death of all of them, and then distributed among the grandchildren, life estates only vested in the children, with fee-simple estates in remainder in the grandchildren, despite a supplementary codicil giving the children power to divide the land among themselves in a stipulated manner if dissatisfied with the arrangement for yearly division of the rents, the codicil being intended not to divest the estates devised by the will, but to devise a method of assuring a harmonious and equitable division of the income, which might or might not be adopted.

Before MEMMINGER, J., Newberry, Fall term, 1919. Modified and remanded.

Action by Frederick Werber, the younger, against Waldemar Werber, Erwin W. Case, Arabella Moran, Louise Van Deventer, Minnie I. Moses, C. Alice Moses, Katie Bryant, Claremont Moses and Grace Virginia Clark, for the construction of the will of Frederick Werber, decd. From decree, the plaintiff, Frederick Werber, the younger, and the defendants Waldemar Werber and Erwin W. Case appeal.

*Messrs. Frederick Werber, Jr.,* and *Mower & Bynum,* for appellants. *Mr. Werber* cites: *Will and codicile must be construed as one instrument*: 30 A. & E. Enc. Law 665; 72 S. C. 179; 71 S. C. 175; 61 S. C. 155; 172 U. S. 363; 8 Port (Ala.) 380; 135 Ala. 585; 141 Cal. 485; 165 Ill. 637; 172 Ill. 323; 99 Ill. App. 555, affirmed 198 Ill. 621; 98 Iowa 175; 99 Ky. 273; 3 Md. Ch. 42; 88 Md. 642; 5 Allen (Mass.) 198; 164 Mass. 270; 181 Mass. 236; 173 Mass. 483; 68 N. H. 582; 56 N. J. Eq. 642, affirmed 43 Atl. Rep. 1098; 57 N. J. Eq. 26; N. Y. 194. *Court will reconcile as far as possible inconsistent provisions of will and codicil endeavoring to disturb the first as little as possible to give effect to the second*: 30 A. & E. Enc. Law. 685. *Clear gift in the will will not be cut down except by an equally clear subsequent provision*: Ib. 687-88. *Where quantity of estate is devised definitely and specifically, only a life estate coupled with power of disposal passes*: Id. 737; 48 S. C. 444; 107 Cal. 587; 13 Ga. 277; 94 Ill. 206; 164 Ill. 227; 107 Ill. 443; 169 Ill. 365; 172 Ill. 18; 209 Ill. 350, affirming 111 .Ill. App. 183 197 Ill. 144; 94 Ind. 228; 113 Ind. 323; 136 Ind. 647; 143 Ind. 373; 146 Ind. 476; 147 Ind. 388; 118 Iowa 264; 57 S. .W. Rep. 240. *Legacy will be held to be vested unless contrary intention appears*: 30 A. &. E. Enc. Law 764. *And when once vested will not be divested except by clear expression*: Id. 786.

*Messrs. Mower & Bynum* cite: *Will must be read as a whole to give effect if possible to its every clause*: 104

S. C. 441. *Intention must be given effect if possible*: 105 S. C. 432. *Interpretation which gives force and effect to all provisions of an instrument is preferable to one which will destroy one or more of its provisions*: 104 S. C. 178; 110 S. C. 130; 113 S. C. 416. *Where an estate is once given by words of clear and ascertained legal significance, it will neither be enlarged or cut down by subsequent words unless they raise an irresistible inference that such was the testator's intention*: 109 S. C. 416.

· *Mr. Dudley C. Outcault,* for appellants, Waldemar Werber and Erwin W. Case, cites: *Revocation by implication*: 2 Jarman Wills, (4th Eng. Ed.) 840; Schouler Wills, ·(5th Ed.) Sec. 487; Underhill Wills, Sec. 251; 2 Alexander Wills, Sec. 977. *To cut down estate already granted intention must be clearly expressed*: Id. Sec. 934; 126 Fed. 701; 154 N. Y. 283; 213 Pa. 14; 62 Atl. 175; 110 Am. St. Rep. 515; 50 So. 81 (Ala.)

*Messrs. Grier, Park & Nicholson* and *Hunt, Hunt & Hunter,* for Alma W. Bruce, respondent, cite: *No words of limitation necessary to create a fee under a will*: Sec. 3571, 1 Civ. Code 1912. *An estate may be enlarged, controlled and even destroyed by implication, but not in contradiction to and denial of an express estate*: 102 S. C. 7; 6 Wall. 458; 116 Ala. 265; 109 Ind. 540. 5 Mass. 537; 89 Me. 128; 25 Wend. (N. Y.) 143; 10 Tex. 572. *The last of two inconsistent provisions must prevail*: 109 S. C. 531; 4 McC. 151. *Courts lean to vested rather than contingent interests*: 24 A. & E. Enc. Law, 392; 1 Strob. Eq. 43; 2 Jarman Wills, 406.

*Messrs. FitzSimons & FitzSimons,* for respondent, Dr. Gustavus Werber, cite: *No words of limitations necessary to create a fee simple in a will*: Sec. 3571, 1 Civ. Code 1912. *Courts favor estates of inheritance*: Redfield Wills, 420, 421: *All papers, will and codicil, are to be taken together.* Id. 435, 436. *In order to cut down or alter an estate previously created language must be clear*:

29 S. C. 470; 7 S. E., R. 817; 93 S. C. 215. *At least as clear as those creating the estate*: 87 S. C. 60, 93 S. C. 216, 77 S. C. 458; 2 McMull. 472. *Example of change of an estate by a codicil*: 1 N. & McC. 321; 71 S. C. 199; 1 McMull. Eq. 201: *Courts will construe an estate as vested rather than contingent*: Strob. Eq. 223. *Intention must be reached by consideration of words used and not by conjecture*: 35 S. C.; Strob. Eq. 327.

*Mr. J. F. J. Caldwell*, also for respondent, Dr. Gustavus Werber, cites: *Children of testator took fee simple to be ascertained by division*: 2 Bail. L. 231. *In case of doubt Court will presume vested interest*: 3 Strob. Eq. 211. *Codicil was merely a continuation of the will, not a revocation*, in 110 S. C. 130; *and in* 61 S. C. 155, *codicil related to after acquired lands and was a republication of the will*. .

*Messrs. C. S. Monteith* and *E. W. Mullins* for respondent, Grace Virginia Clark, cite: *A gift or devise to persons who shall be surviving at some particular time not clearly specified in will, the Court will infer that estate vests in those living at testator's death*: Schouler Wills, Sec. 562; 40 Cyc. 1675; 59 S. C. 4; 70 S. C. 33; 21 S. C. 513; 87 S. C. 55. *Mary L. Werber took vested interest at death of testator, uncertain as to quantity or quality only*: 15 S. C. 168; 11 Rich. Eq. 527; 1 Hill Ch. 357. *Power of sale and direction of sale does not make interest contingent*: 4 Rich. Eq. 475; 2 Hill Eq. 430: *Codicil will not revoke more than is necessary*: Schouler Wills, Sec. 437. *And no interest under will will be divested by conjecture*: Id. Sec. 479.

September 26, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for a construction of the will and codicil of Frederick Werber, Sr., a citizen of Newberry County, who died September 29, 1891, leaving of force a will dated

April 28, 1884, and a codicil thereto, dated six years later, April 28, 1890, of which his widow, M. Louise Werber, duly qualified as executrix on October 19, 1891. The testator was survived by his widow, M. Louise Werber, and five children; Frederick Werber, Jr., Andrena Werber (now Moses), Alma Werber (now Bruce), Gustavus Werber, and Mary L. Werber.

Before any division of the estate was attempted, the daughter, Mary L. Werber, died without issue February 13, 1912, leaving a will making the defendant Grace Virginia Clark her sole devisee, legatee, and executrix. The widow, M. Louise Werber, died March 10, 1913; the defendants Waldemar Werber and Erwin W. Case are the only living children of the plaintiff Frederick Werber, Jr; the defendants Arabella Moran, Louise Van Deventer, Minnie L. Moses, Kate Bryant, and Claremont Moses are the only living children of the defendant Andrena Moses; the defendants Alma W. Bruce and Gustavus Werber have no children.

It will thus be seen that all of the living children and grandchildren of Frederick Werber, Sr., the testator, and Mary Virginia Clark, devisee of Mary L. Werber, the deceased daughter, have been made parties to this action, which has been instituted for the purpose of obtaining a judicial construction of the will and codicil referred to, the point of controversy being whether the children of the testator take under said will and codicil fee-simple estates in the real estate, or life estates, with remainders to the grandchildren.

The testator owned at the time of his death three parcels of real estate: (1) The Saluda Old Town plantation, containing nearly 1,000 acres; (2) the Bush River plantation, containing about 1,200 acres; and (3) a house and lot in the city of Newberry, the lot containing about 4 acres.

The original will provides as follows:

Article 1. The testator directs that the whole of his real and personal estate be kept together for the purpose of paying his debts, they to be paid out of the net income derived from the Saluda River plantation; this article contains certain directions as to the payment of his debts which are not material to the present controversy.

Article 2 is as follows:

"It is my desire that my two plantations be kept as my estate during the life of my wife, and the lives of my children, and until the death of my last surviving child, for the use and benefit of my said wife, and my children, and their issue per stirpes, of my deceased children; after the death of my wife and all my children, it is my will that then my said real estate be partitioned and distributed amongst the issue of my children per stirpes."

The other provisions of the will do not immediately affect the mater under review and will only be referred to as occasion may arise.

The codicil opens with this statement: "I, Frederick Werber, of the county and State aforesaid, by way of codicil, do supplement this my last will and testament"— indicating that the original will accompanied physically the codicil, and was not intended to be revoked except in such particulars as it might be in irreconcilable conflict with the codicil. The first article contains this statement:

"Whereas by my aforesaid will I have directed that the two plantations I possess should remain as my estate, my children yearly equally dividing the rents of said plantations, and whereas they may be dissatisfied with such arrangement, and might not be able to agree upon an equal division of said rents, therefore in order to provide against any such contingency arising I hereby give my children power and authority to divide the said land among themselves, providing it is done in the following manner."

The "manner" referred to is quite peculiar. He directs that—

"To the one who first. desires his or her share of the land, he or she shall have the following tract of land, provided he or she shall give notice in writing to my other heirs of his or her intention to· take the tract of land herein ·described as his or her share of the two plantations I now possess, on the first day of January succeeding the time such notice was given."

This is followed by a description of the subdivision, a part of the Bush River plantation, and a statement that .the· testator· was then receiving a yearly rental of 12 bales of cotton therefrom. A similar provision follows in favor of the one who should next give notice; the subdivision, also a part of the same plantation, containing 329 acres, the yearly rental stated to be 11 bales, which. might be increased by clearing. A similar provision follows in favor of the one who should next give notice; the subdivision also a part of the same plantation, containing 71 acres, and the yearly rental stated to be 12 bales.

The Saluda River plantation, not included in the foregoing provisions, was then directed to be divided equally between the two children who had not given the notices as before stated to be 24 bales. Then follows a direction that any other property, the division of which may not have been provided for, shall be divided equally among his children.

The sixth article is as follows:

"In case of the demise of any of my children without issue, before this division can be made then their share or shares shall be divided equally between my surviving children."

The seventh:

"None of my children can claim any of the property under the provisions of· this codicil until all my debts are paid, until after the death of my wife Louise M. Werber."

In. December, 1915, after the death of the widow in 1913, and after the payment of all debts owing by the testator, the Bush River plantation was divided between the defendants Andrena Moses, Alma Bruce, and Gustavus Werber, they taking, in conformity with the directions of the codicil, respectively tracts 1, 2, and 3 as described therein. Subsequently, on March. 6, 1916, Andrena Moses and Gustavus Werber by reciprocal deeds exchanged the tracts severally allotted to them. The other plantation, the Saluda River place, has not been actually divided. The questions for decision are:

(1) Do the children of the testator own the several tracts allotted to them in fee simple, or have they only a life estate therein, with remainders to the grandchildren of the testator?

(2) What interest, if any, does Grace Virginia Clark, the devisee under the will of the deceased daughter Mary L. Werber, take in the estate of the testator?

It is conceded on all sides, as well it might be, that under the original will the children of the testator are jointly entitled only to the income of the estate during their respective lives; that, if any of them should die before the period of division arrived, leaving issue, such issue should represent the parent, per stirpes, in the distribution of the yearly income, pending the arrival of the period of distribution; that, if any one of them should die before that period leaving no issue, that interest should devolve upon the survivors; that the period of distribution was fixed at the death of the last surviving child of the testator; and that then the two plantations should "be partitioned and distributed amongst the issue of my children per stirpes."

It is contended by the three children, Andrena Moses, Alma Bruce, and Gustavus Werber, who received respectively allotments of parcels 1, 2, and 3 of the Bush River plantation, in conformity with the codicil, that the effect

of the codicil was to vest in them fee-simple titles to the said parcels respectively, and that they are entitled also to a distributive share in fee simple of the Saluda River plantation and of the house and lot in Newberry. The case turns upon the legal effect of the provisions of the codicil.

To sustain the contention of the defendants, it is apparent that we must hold that there is an irreconcilable conflict between the original will and the codicil; the original will devising the fee-simple estate in remainder to the grandchildren, and the codicil destroying all semblance of a remainder, and devising the fee simple immediately to the children of the testator. Of course, if that should appear—that is, that there is such irreconcilable conflict—the provisions of the codicil must prevail.

In *Logan v. Cassidy*, 71 S. C. 175; 50 S. E. 794, after a full and careful statement of the comparison of a will and a codicil, the Court says:

"A codicil likewise, if inconsistent with the preceeding will, is, in law, a revocation of it. That is, so inconsistent that both cannot stand."

In *Anderson v. Butler*, 31 S. C. 183, 9 S. E. 797, 5 L. R. A. 166, it is declared:

"The rule as to the construction of wills and codicils is as stated in defendant's (appellant's) argument, to wit: 'Not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicils.' "

In 28 R. C. L. 199, it is said:

"It is the well-settled general rule that a will and codicil are to be regarded as a single and entire instrument for the purpose of determining the testamentary intention and disposition of the testator, and both instruments together will be construed as if they had been executed at the time of the making of the codicil."

And at page 200:

"The testator's purpose in making the codicil may be found in the codicil itself, and in construing a will and codicil, a dispositon made by the will is not to be construed further than absolutely necessary to give effect to the codicil. A codicil will not be allowed to vary or modify the will, unless such is the plain intent of the testator. A revocation by a codicil of a gift in the will extends only so far as the will is consistent with the codicil, and a gift once made by will is not to be cut down by a subsequent codicil unless the intention of the testator to that effect appears clearly or by necessary implication."

In 30 A. & E. 665, it is said:

"In construing a will and codicil, or separate codicils, it is a clear and settled rule that they are to be taken and construed together, in connection with each other, as parts of one and the same instrument, and the codicils shall not be taken to vary or modify the will unless such was the manifest intention of the testator"—citing, among an array of cases, *Vaughan v. Bridges,* 61 S. C. 155, 39 S. E. 347.

In 30 A. & E. 685, it is said:

"If possible, the Court will reconcile two apparently inconsistent and repugnant provisions in a will, in order to carry out the testator's intentions as to the disposition of his estate, and in so doing will endeavor not to disturb the first provision further than is absolutely necessary to give effect to the second. But if the provisions are absolutely irreconcilable, the latter will be preferred, and will prevail over the former. Thus, where a will and a codicil are irreconcilable, the codicil, as the last indication of the testator's intention, must prevail."

Section 3569, vol. 1, Code of Laws, 1912, provides:

"No will or testament * * * of any real or personal property or any clause thereof shall be revocable but by some other will or codicil in writing, or other writing declaring the same," etc.

Closely allied with this principle is that declared in the following quotations:

In 30 A. & E. 687, it is said:

"It has become a settled rule of construction that, when the words of the will in the first instance distinctly indicate an intent to make a clear gift, such gift is not to be cut down by any subsequent provision which is ambiguous or inferential, and which is not equally as distinct as the former; or, the rule may be stated that a clear gift is not to be cut down by anything which does not, with reasonable certainty, indicate an intention to cut it down."

"Where an estate is once given by words of clear and ascertained legal significance, it will neither be enlarged nor cut down by super-added words in the same or subsequent clauses of the will, unless they raise an irresistible inference that such was the intention of the testator." *Lawrence v. Burnett,* 109 S. C. 416, 96 S. E. 144; *Adams v. Verner,* 102 S. C. 7, 86 S. E. 211; *Howze v. Barber,* 29 S. C. 466; 7 S. E. 817; *Smith v. Smith,* 93 S. C. 213, 76 S. E. 468: *Jennings v. Talbert,* 77 S. C. 454, 58 S. E. 420.

"It is a familiar and well-recognized principle that an interpretation is to be preferred which will give force and effect to all the provisions of an instrument, rather than one which will destroy one or more of its provisions." *Pearson v. Easterling,* 104 S. C. 178, 88 S. E. 376.

In *McClellan v. Mackenzie,* 126 Fed. 701, 61 C. C. A. 619, the Court declares:

"If there is anything well settled it is that a Court will not cut down an estate once granted absolutely in fee by limitations contained in subsequent parts of a will, unless the intent to limit the devise is manifested clearly and

unmistakably. If the expression relied upon to limit a fee once devised be doubtful, the doubt should be resolved in favor of the absolute estate. *Birney v. Richardson,* 5, Dana, 424; *Trabue v. Terry* (Ky.) 9 S. W. 162; *Meacham v. Graham,* 98 Tenn., 190, 205, 39 S. W. 12; *Benson v. Corbin,* 145 N. Y. 358, 40 N. E. 11; *Washbon v. Cope,* 144 N. Y. 287, 297, 39 N. E. 388."

But is there such irreconcilable conflict? The rule is that, if the provisions of the codicil can reasonably be reconciled with the provisions of the will, it must be presumed that the testator so intended and the Court will give effect to such intention.

2    It is noticeable that there is no fee-simple estate expressly conferred upon the children by the codicil. In order to accomplish that result, resort is had to a rule of law which, in wills, dispenses with the necessity for words of inheritance. But upon the issue whether the testator meant to cut down a previous fee-simple estate in the will by a provision in the codicil, the necessity for a resort to this rule of law presents an exceedingly weak support for the contention; with greater reason it supports the contrary, for if he had really intended to destroy an estate conferred by the will, the slightest degree of care would have suggested non-reliance upon the rule of law and a direct expression to that effect.

It is noticeable also, and significant, that the codicil is denominated a supplement to the will. While this, of course is not controlling; it is a circumstance worth considering in determining the testator's intention. It would be remarkable, if he intended to substitute for a life estate in his children fee-simple titles, and to destroy entirely the fee-simple estates in remainder created for the grandchildren, that, instead of making a new will, he executed a supplement to the former will, without a word indicating that he intended to annul the estates vested in the grandchildren, or that he intended the children to take

fee-simple estates, other than the implication created by law, with which he is not shown to have been familiar.

There is no direct devise in the codicil to the children; it confers simply the power upon them to divide the land and go into possession of the several tracts, as a substitute plan for that contained in the will, by which the income from the property should be equitably divided among them, in the event that they should become dissatisfied with the arrangement for that purpose contained in the will. The testator may well have concluded, after the lapse of six years from the making of the will, and from the changes which inevitably occur in the lives of a grown-up family, that the plan of the will might be found cumbersome and unsatisfactory, no one was particularly made the custodian and manager of the property, and it was not improbable that a common holding of all the property, a common management of the farming operations and a division of the income at the end of the year would result in wrangles and unpleasantness. He appears to have been so anxious to preserve harmony in the family that he deprecated even what is now being done —a controversy in the Courts concerning the division of his property. This anxiety led him to provide this alternative plan for the division of the income, in case the former arrangement should prove unsatisfactory. Considered upon its merits as an alternative plan for a division of the income, there can be no question but that it would prove more satisfactory for each one to have his life estate set apart to itself, and each to be responsible for and entitled to what he could make out of it. That this was his intention is strongly suggested by the rental valuations he placed upon the several tracts, indicating that the tracts were to be allotted not according to their areas or market value, but according to what was uppermost in his mind—the incomes—to which alone the children were severally entitled.

In addition to the fact adverted to, that there is no direct devise to the children in the codicil, the further consideration is important that there is no obligation imposed upon them to make the allotment provided for in the codicil. It is a plan proposed by the testator which they may or may not have adopted, their adoption depending upon the failure of the plan for a division of the yearly rents provided for in the will, and this plan, of course, prevailed until their dissatisfaction with it developed. As a matter of fact, it did prevail from the time of the death of Mrs. Werber March 10, 1913, until the first notice of dissatisfaction was given December 15, 1915, nearly three years. The plan of the codicil being optional, it is clear that, if there had been no steps taken to adopt it, the plan of the will would have continued. Both plans affected only the division of the rents, and it is inconcevable that the adoption or the rejection of either plan would or was intended to change the course of the fee-simple title.

It is impossible that the direction which the fee simple estate should take upon the death of the testator could be a matter of doubt. As soon as the breath left his body the title to his lands left him, and lodged in some one. To adopt the theory of the defendants, the title then vested in them for life, with remainders to the grandchildren, and so remained, until in December, 1915, they expressed themselves dissatisfied with the "arrangement" which had been made by the will, and that then it passed out of the grandchildren and vested in them. The "arrangement," they contend, including not only the estate intended to be passed by the will, but also the method of dividing the income. After providing for them only a life estate, the fee in remainder vesting in the grandchildren, it was hardly in the mind of the testator to make the estate in the grandchildren dependent upon the satisfaction of the children who received only the life estates. This is particularly true of those children

of the testator who are without issue, who are how confronted with the contingency of being adjudged to hold only life estates, which upon their deaths will go to the children of their brothers and sisters.

Even if the codicil raised a doubt as to the estate intended to be devised to the children who received the separate allotments, we would be disposed to hold that it has not divested the estate devised by the will. For, in case of doubt as to a conflict between a will and a codicil, a construction which will be in harmony with both should be adopted. But we have not the slightest doubt that the testator intended the provisions of the will to stand, vesting in the children life estates and in the grandchildren fee-simple estates in remainder; and that the provisions of the codicil were intended simply to devise a more satisfactory method of assuring a harmonious and equitable division of the income, which might or might not be adopted. The provision in the codicil, article 1, which we repeat with explanatory interpolations, is as follows:

"Whereas by my aforesaid will I have directed that the two plantations I possess should remain as my estate, my children yearly equally dividing the rents of said plantations (as a matter of fact, the will provided more than that; it provided for a partition and distribution of the estate between the grandchildren; the fact that this part of the will was not referred to in this paragraph indicates that it was not intended to be altered and whereas, they may be dissatisfied with such arrangement (that is, holding the estate together, and the annual division of the income), and might not be able to agree upon an equal division of said rents, therefore in order to provide against any such contingency of a disagreement in the division of the income, not in order to enlarge the estate in the children from a life estate to a fee-simple, to which no reference is made), I hereby give my children (not an estate in the land but)

power and authority to divide the said land among themselves (so that each one would know exactly how much income he was entitled to and there could be no dissatisfaction as to an equal division of the rents). * * *"

If the testator had intended to revoke by his codicil the estate in remainder devised in the will to the grandchildren, it would have been a simple matter to have said so. Or if he had intended by implication to do so, it would have been equally as simple to have devised fee-simple estates to the children in express terms, which, of course, would have had the effect of revoking the remainders to the grandchildren; in which event it would have been altogether unnecessary to give as his reason therefor the possibility of disagreement between them in the division of the rents. The fact that he gives this as his reason for the changed "arrangement" is strongly indicative of his purpose that their interest in the estate should be confined to the rents, and that the provision of the will for the grandchildren's estate should stand.

The contention of the defendants makes the will and the codicil so absolutely conflict that it is impossible to conceive the utility of the testator's allowing the will to stand at all, outside of a few trivial provisions that may readily have been incorporated in the codicil as a new will; the fact that the will was recognized as unrevoked, in the preamble to the codicil, declared to be a supplement thereto, is persuasive that the testator intended that it should remain unrevoked except as to the matter of a division of the yearly rents.

The fact that in the codicil the several allotments were referred to as "his or her share of the land," "his or her share of my two plantations," is not inconsistent with the intention that life estates, and not fee-simples, should be received by the children, for we find in article 6 of the will that the admitted life estate of a son who might die leaving

a wife, without issue, is similarly characterized, "her deceased husband's share in my estate." The result is that the tract allotted to Andrena Moses shall remain in her possession until the last of the testator's children shall die; she receiving the income thereof; if she should not be the last to die, upon her death her issue shall receive the income until the period of distribution shall arrive; at which time it shall become a part of the general estate for partition under article 2 of the will.

The tract allotted to Alma W. Bruce shall remain in her possession during the term of her natural life, she receiving the income thereof. She has no issue now, and if she should die without issue it shall go to the survivor or suvivors of the testator's children, to be held by them until the period of distribution shall arrive, at which time it shall become a part of the general estate for partition under article 2 of the will. The children of a child who may predecease Alma W. Bruce shall be entitled per stirpes to share in the income of the Alma W. Bruce allotment between the date of her death and the arrival of the period of distribution.

The tract allotted to Gustavus Werber shall be subject to the same conditions as are above set forth in reference to the tract allotted to Alma W. Bruce.

The Saluda River plantation, as to which no allotment has been made, shall be held in common by the children of the testator or their children per stirpes if any should die prior to the period of distribution, the income to be divided in the following proportions: To Frances Werber, Jr., one-half plus one-fourth of the other half, five-eighths; to Andrena Moses, one-eighth; to Alma W. Bruce, one-eighth; to Gustavus Werber, one-eighth. When the period of distribution shall arrive it shall become a part of the general estate for partition under article 2 of the will. The children of a child who may die before such period of distribu-

tion shall be entitled per stirpes to share in the income of this plantation, between the date of the death of such child and the period for distribution.

In reference to the house and lot at Newberry, the direction in the fourth clause of the original will is that, after the death of the widow, if the house and lot shall not have been sold (under article 1), it shall be appraised and assigned at three-fourths of its appraised value to one or more of the children, in the order named. The implication is that the recipient shall account to the other children for their shares therein. No one has up to this time availed themselves of the option; and yet we cannot say that they are foreclosed. The first choice was given to the daughter Mary L. Werber, who died before the death of the widow. That choice has devolved by devise upon the defendant Grace Virginia Clark. If neither she nor any of the children desire to avail themselves of the option the property will be subject to partition or sale and equal distribution of the proceeds between Grace Virginia Clark and the four children.

The sixth clause of the codicil refers alone to the two plantations, and does not affect the Newberry house and lot, the disposition of which is controlled by the original will.

The judgment of this Court is that the decree of the Circuit Court be modified to conform to the conclusions herein announced, and that the case be remanded to that Court for such further orders as may be necessary to carry them into effect.