### 6609

### JENNINGS v. TALBERT.

LIMITATION OF ESTATES—WILLS—TRUSTS—AMBIGUITY—PAROL EVIDENCE. —Words relied on to cut down an estate previously created in a will must be mandatory and in themselves show the manner in which they are to operate—to what degree the estate was intended to be cut down or what was the precise nature of the trust. A devise "to my beloved husband * * * during the term of his natural life investing him with power to rent or lease," to collect rents and conferring power of sale within his discretion "and to distribute the proceeds of such rents and sales between my two daughters * * * and their heirs share and share alike," gives the husband a life estate.

Latent and patent ambiguity defined and rule for admission of parol evidence stated.

Before PURDY, J., Abbeville, April, 1907.    Reversed.

Action by Lillie May Jennings against R. J. Talbert, individually, and as executor of Georgia A. Talbert and Anna P. Robinson.    From Circuit decree defendant, R. J. Talbert appeals.

*Mr. Wm. J. Thurmond,* for appellant, cites: 29 S. C., 472; 5 S. C., 459; 2 Story Eq. Pars., 1069, 1070; 1 Jar. on Wills, 329, 461; 3 Beav., 174; 109 U. S., 725; 30 Ency., 687; 2 Strob. Eq., 142; 7 L. R. A., 836; 29 Ency., 340,

363, 364, 365, 367; Speer. Eq., 82; 16 Ves. Jr., 314; 59 S. C., 148; 1 Ency., 533, 535, 534; 31 S. C., 606; 37 S. C., 461.

*Mr. Wm. N. Graydon,* contra, cites: 30 Ency., 661, 663, 664; 1 Dess., 237.

August 2, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. Mrs. Georgia A. Talbert died in September, 1900, seized of certain real estate in Abbeville County. According to her last will and testament she willed, devised and bequeathed certain property "to my beloved husband, Dr. R. J. Talbert, during the term of his natural life, investigating (investing) him with power to rent and lease said lands and building, and collect rents for the same, and I further confer upon him power to sell, make, execute and deliver titles to all singular, the property above described or any part thereof, and to distribute the proceeds of such rents and sales between my two daughters, Anna P. Robinson and Lillie May Jennings, and their heirs, share and share alike." In October, 1906, plaintiff, Lillie May Jennings, commenced this action against R. J. Talbert, individually and as executor of the estate of Mrs. Talbert, and against Anna P. Robinson, who refused to join as plaintiff. The complaint alleged concealment of the will by Dr. Talbert; that, according to its terms, he held the property in trust for plaintiff and Anna P. Robinson; that defendant Talbert had committed waste by selling timber off of said land. It demanded a construction of the will; an accounting for rents and profits of said real estate and for timber and other property disposed of; that defendant be enjoined from further waste; that he give bond for the faithful performance of his duties as trustee or be removed; and, finally, that plaintiff have judgment against him for one-half of the rents and profits of

the real estate and for one-half the value of timber and other property disposed of.

Defendant answered and gave notice that upon the calling of the case a demurrer would be made to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action, in that it appeared upon the face of the will that defendant, R. J. Talbert, had a life estate in the property. After hearing the motion, Judge R. O. Purdy refused to sustain the demurrer or construe the will, saying: "That in a case of this kind, where the language bears two constructions, it would be committing an injustice for the Court to undertake to pass upon the rights of the parties without knowing something of the circumstances relating to the property or the parties." By agreement the question as to waste was omitted in this hearing. The defendant appeals.

In his conclusion, we think the Circuit Judge committed error. That there is some unclearness or ambiguity about the will is undeniable. Ambiguities, however, are patent and latent, the distinction being that in the former case the uncertainty is one which arises upon the words of the will, deed or other instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the will, deed or other instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe. 2 Ency. of Law, 388. Thus, where there is conflict in words or clauses of a will or other instrument, the ambiguity is patent. Where, however, there is no defect upon the face of the paper, but when attempting to put it into effect it appears that there is uncertainty, as for instance where there are two legatees of the same name or two pieces of property which the description fits equally well, the ambiguity is latent. In the former case the construction and intention must be derived solely from the words contained in the instrument. In the latter case, parol testi-

mony may be received to enable the reaching of a correct conclusion. 30 Ency. of Law, 673; *Daniel* v. *Dendy,* 2 McM., 130; *Patterson* v. *Leith,* 2 Hill Ch., 17. The ambiguity here is too clearly patent to require discussion. Therefore, parol testimony could *not* be received for enlightenment on the subject.

The words in which doubt occurs are those quoted above. It will be noticed that by the first words used an absolute estate for life is conferred upon the defendant. Continuing, the testator invests him with power to rent and lease the said lands and collect rents for the same, and, in case he saw fit, to even sell all, or any part thereof, and to distribute the proceeds of such rents and sales between testatrix's daughters. The most that can be said of these additional clauses is that they invest defendant with certain discretionary powers. It seems reasonable to suppose that had Mrs. Talbert wished her husband to hold the property in trust for her daughters, as plaintiff contends, she would have said so, thus removing all doubt. A more reasonable inference is that on account of the high regard in which she held her husband, and resting implicitly on her confidence in him, she chose to leave it to his discretion as to the best way in which her daughters' interests in the property should be guarded. In regard to plaintiff's contention, we remark there is a tendency in modern decisions to restrict within very narrow limits the implication of trusts where they are not expressly declared, the ground being that any ordinary person wishing to create a trust would do so in mandatory words, that method being simplest and most certain.

Mr. Pomeroy, in his work on Equity Jurisprudence, section 1015, says: "Judges for some time past have shown a decided leaning against the doctrine of precatory trusts and a strong tendency to restrict its operation within reasonable and somewhat narrow bounds; many of the earlier decisions would certainly not be followed at the present

day.   He further adds, in the following section: "Upon
the authority of the more modern decisions, the whole doc-
trine may be summed up in a single proposition: In order
that a trust may arise from the use of precatory words,
the Court must be satisfied from the words themselves,
taken in connection with all the other terms of the disposi-
tion, *that the testator's intention to create an express trust
was as full, complete, settled and sure, as though he had
given the property to hold upon a trust declared in express
terms in the ordinary manner."*   To the same effect is
Story on Equity Jurisprudence, section 1068b.

The rule adopted in this State, and in a number of other
jurisdictions, is that where an absolute and unqualified
estate is first created in words which import absolute uncon-
trollable ownership, words relied on to show that the tes-
tator intended to cut down such an estate, or to affect it
with any trust, must not only be mandatory, but must in
themselves show the manner in which they are to operate,
so that the purpose of the testator may be clearly appar-
ent—how or in what degree he intended to cut down the
estate previously created, or what was the precise nature
of the trust he intended to impress upon it.   *Howze* v.
*Barber & Drennan,* 29 S. C., 470, 7 S. E., 817, and authori-
ties; 30 Ency. of Law, 687, and authorities.

Viewing the words now under consideration in the light
of these rules of law, we think plaintiff's contention cannot
be sustained.   It is admitted by all that the first clause
standing alone would vest the defendant, R. J. Talbert,
with a life estate.   In order to cut down the estate, the
language must be mandatory; that is, a clear command or,
in the language of the criterion above quoted, the terms
taken in connection with the whole will must show the tes-
tator's intention to establish a trust as clearly as if he had
declared a trust in express terms.   Certainly there is noth-
ing mandatory in the terms used, nor showing a clear
intention to create a trust.   The terms "investing him with

power to rent, etc.," "and further conferring upon him power to sell, etc.," as was said above imply absolute discretion in the matter. But granting that they are mandatory, even more is required, they must go further and show in what manner they are to operate, how or in what degree the testator intended to cut down the estate previously granted, or what was the precise nature of the trust he intended to impress upon it. This condition is also unfulfilled. By reference to the words, it is almost impossible to reach the testator's intention should we adopt the view of the implication of a trust. Suppose, for instance, instead of renting the property under consideration, defendant should have utilized it for his own purposes, would he be responsible for rents? Again, when are the rents to be distributable? Numerous other difficulties might conceivably arise if we endeavor to impress upon the property a trust.

We think, and therefore hold, that Mrs. Talbert's intention was to invest her husband with a life estate in the property. That much is clear. In construing the remaining clauses, if we take into consideration the esteem in which she, according to the language of the will, held her husband, a very probable inference is that it occurred to her that the defendant would at all times have the welfare of his daughters in mind and that possibly circumstances might arise in which he might wish to rent the land or even sell it for their benefit. In that case, she wished him to have the power to utilize the property as he saw fit. Of course, the grant of the life estate gave him power to rent and collect the rents so long as the property was in his possession, but by expressing the power it cannot be said that the necessary inference was that he should hold the property in trust for his daughters. The testatrix seemed to rest entirely upon her husband's discretion. Hence we think plaintiff has no right to complain of his actions so long as he does not injure her future estate. The ground

of the demurrer is well founded and should have been sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.